UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Eva Marie Baker,<br><br>      Plaintiff,<br><br>  v.<br><br>Commissioner of Social Security,<br><br>      Defendant. | No.  1:26-cv-1090-GSA<br><br>**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST COMMISSIONER OF SOCIAL SECURITY**<br><br>(ECF Nos. 12, 14) |

**I.      Introduction**

Plaintiff Eva Marie Baker seeks judicial review of a final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (SSDI) and supplemental security income (SSI) pursuant to Titles II and XVI of the Social Security Act.

**II.      Procedural Background**

On March 2, 2023, Plaintiff filed applications for disability insurance benefits and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. AR 286–94.  In both applications Plaintiff claimed a disability onset date of April 3, 2016.

The Commissioner denied Plaintiff's claim initially on June 8, 2023, and on reconsideration on June 26, 2024. AR 123–36.  The ALJ held a hearing on June 25, 2025.  AR 8–31.  On July 3, 2025, the ALJ issued an unfavorable decision. AR. 625–43. The Appeals Council denied Plaintiff's

1

request for review on December 15, 2025, and this appeal followed.  AR. 619[1]

### III.   The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a Claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but it is less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation and quotations omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the Agency's decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his/her physical or mental impairment or impairments are of such severity that s/he is not only unable to do his/her previous work, but cannot, considering his/her age, education, and

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. ECF Nos. 7, 8.

work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which s/he lives, or whether a specific job vacancy exists for him/her, or whether s/he would be hired if s/he applied for work.  42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for an ALJ to employ when evaluating the alleged disability of a claimant.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether the claimant has engaged in substantial gainful activity during the period for which Plaintiff is alleging he or she experiences a disability; 2- whether the claimant has a medically determinable "severe impairments" affecting the claimants ability to perform basic work activities; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in the agency's regulations (20 C.F.R. § 404, Subpart P, Appendix 1); 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant has the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV.    The ALJ's Decision

At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity during the summer of 2023 and the summer of 2024, but that there was a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity, and the analysis thus proceeded to step two.  AR 631.

At step two, the ALJ found that Plaintiff had the following severe impairments: bilateral knee osteoarthritis and obesity.  AR 631.  Also at step two, the ALJ found that Plaintiff had the following non-severe impairments: diabetes, hypertension, carpal tunnel syndrome, stress urinary

3

incontinence, asthma, history of seizure-like activity, depression, anxiety, and history of substance abuse.  AR 631–33.

At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 634.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 416.967(b), except:

> she is limited to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. In addition, she should avoid hazards such as unprotected heights and moving machinery.

AR 635.

At step four, the ALJ found as follows: 1- since January 1, 2023, Plaintiff was capable of performing past relevant work as a Home Attendant; 2- Beginning in mid-summer of 2023, Plaintiff was also capable of performing past relevant work as a Salesperson, General Merchandise.  AR 637.

Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since January 1, 2023.  AR 638

## V.    **Issues Presented**

Plaintiff asserts three claims of error: 1- "The ALJ's RFC finding is not consistent with any medical opinion, and thus is not supported by substantial evidence."; 2- "Where there are no opinions supporting the ALJ's RFC finding, the ALJ failed to properly develop the record."; 3- "Where Plaintiff's MRIs documented severe knee degeneration, the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's symptom statements."[2]

Because the first two issues are somewhat interrelated, they will be addressed together.

### A.    **Medical Opinion; RFC**

#### 1.    **Applicable Law**

Before proceeding to steps four and five, the ALJ determines the claimant's residual

---

[2] These issues are stated slightly differently just before Plaintiff's analysis begins at page 5 of the motion.

4

functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).

### 2.   Analysis

#### a.   Summary of Medical And Testimonial Evidence

As a starting point concerning Plaintiff's first two interrelated claims of error, at the core is whether the existing medical findings of record concerning Plaintiff's knee osteoarthritis were sufficient to sustain the ALJ's RFC, or not because the RFC lacked the foundation of a medical expert's opinion interpreting the relevant medical evidence followed by an opinion describing Plaintiff's functional limitations resulting therefrom.

Of note, neither party contests the accuracy or completeness of the ALJ's factual summary, which is set forth here for ease of reference:

> X-rays of the claimant's knees taken in October 2022 and June 2023 showed marked/severe degenerative changes (Exhibits B2F/3, B4F, and B11F/23). However, she has not undergone knee surgery, did not find physical therapy to be helpful, is using only lidocaine patches for pain, and does not take any pain medication (hearing testimony); there is little evidence that she has had difficulty obtaining treatment as necessary. She has not alleged any significant side effects from lidocaine patches. She testified that she got an orthopedic injection for her knee about a year ago but her pain worsened, and now she is pending with a pain specialist (hearing testimony). The treatment notes reflect that she sometimes had tenderness, crepitus, and diminished ranges of motion in the knees (Exhibits B2F, B7F, B9F, and B11F), but she usually retained most of their ranges of motion, exhibited good patellar tracking bilaterally, displayed no knee laxity bilaterally, and demonstrated normal strength in the right lower extremity and at least **3-/5** strength in the left lower extremity (Exhibits B6F and B9F). She was often noted to have normal ranges of motion throughout the musculoskeletal system (Exhibits B6F/5, B8F/7, B8F/12,

5

and B8F/17). She was able to sit comfortably without difficulty on August 22, 2024 (Exhibit B6F/5). She allegedly uses a cane and a walker, but there is little objective evidence that a medical source prescribed long-term use of any assistive device (Exhibits B1F-B11F). Although a medical source ordered a walker in March 2022 and physical therapy records from 2024 mentioned walker use (Exhibits B1F/10 and B7F), the claimant admittedly started using a walker only 4 months ago and it is admittedly not prescribed (hearing testimony). The treatment notes also reflect that the claimant usually had a normal gait and ambulated without any assistive device (Exhibits B6F and B9F). Moreover, as discussed earlier, the record reflects substantial gainful activity in 2023 and 2024, which shows that she has the capacity to perform some work (Exhibits B14D and hearing testimony). Although she has described daily activities that are highly limited (e.g., Exhibit B14E), it is difficult to attribute that degree of limitation to her medical condition, as opposed to other reasons, in view of the medical evidence and other factors discussed in this decision. Overall, the claimant's allegedly limited daily activities are considered to be outweighed by the factors discussed in this decision.

### b.   **Discussion**

Counsel for Plaintiff succinctly summarizes Plaintiff's position in the introductory portion of their motion for summary judgment.  It reads as follows:

This case concerns a Plaintiff with multiple physical and mental impairments including advanced arthritis in her knees. Plaintiff's physician documented that she had "end stage osteoarthritis" in one knee and "moderately severe" arthritis in the other knee [AR 471]. Plaintiff consistently reported significant pain symptoms to her physicians, which were confirmed by examination findings. The ALJ erred in evaluating Plaintiff's disability claim in several ways. First, the ALJ erred in making the residual functional capacity findings without any foundation in medical opinion evidence, as there is no opinion in the record regarding Plaintiff's functional limitations.

Plaintiff points out that the State agency physicians' prior administrative medical findings (PAMFs) state that there was insufficient evidence to opine on functional limitations. MSJ at 6 (citing AR 85, 104, 106).

Plaintiff is correct, in June 2023 consultant Dr. Frye stated that the case had "IE" (insufficient evidence) to adjudicate functional limitations (AR 85), and in June 2024 consultant Dr. Rugama, stated, "IE to adjudicate this recon case."  AR 104.

Defendant responded as follows:

"Plaintiff is factually incorrect that there is no medical source input on her impairments. Plaintiff does concede that state agency physicians reviewed her records and that the ALJ considered the physicians' findings." Resp. at 7 (emphasis added).

Both are correct, the prior administrative medical findings (PAMFs) do show that both Drs. Frye and Rugama did provide **input**, and their input specifically found that there was insufficient evidence upon which to render a functional **opinion**. As such, because Drs. Frye and Rugama did not opine as to what Plaintiffs physical limitations would be as a result of her knee impairments, they did not provide a "medical opinion" as that term is defined in the regulations. See 20 C.F.R. § 404.1513(a)(2) (explaining that a medical opinion "is a statement from a medical source about what you can still do despite your impairment(s)."

On a more general level, the parties dispute whether medical opinions are even needed to support an RFC. In support, Plaintiff cites the following cases:

See, e.g., Breazell v. Comm'r of Soc. Sec., 2025 WL 2962451, at *3 (E.D. Cal. Oct. 21, 2025) ("The ALJ determined Plaintiff's RFC without a medical opinion that defined Plaintiff's limitations and the ALJ's specific determinations regarding Plaintiff's functional limitations lacked the support of substantial evidence."); Gregory C. v. Comm'r of Soc. Sec., 2025 WL 3004043, at *2 (N.D. Cal. Oct. 27, 2025) (ALJ's RFC finding not supported by substantial evidence in the "rather extraordinary [case] that there is not a single opinion regarding Plaintiff's physical functions by any medical professional in the record") (collecting cases); Shipp v. Colvin, 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26, 2014) ("Since ... the record contains no assessment by a treating or examining doctor regarding the effect of plaintiff's physical impairments on her ability to function, it appears that the ALJ's physical residual functional capacity assessment was erroneously based solely on the ALJ's own, lay interpretation of plaintiff's testimony and other raw medical evidence in the record."). That is the situation in this case.

MSJ at 7.

In opposition, Defendant states the following:

No opinion evidence was required because the RFC is reserved to the ALJ, not a doctor, based on all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1); see also SSR 96-8p. While ALJs consider medical opinions, they do not defer to them (20 C.F.R. § 404.1520c(a)), and regulations (20 C.F.R. § 404.1546(c)), and Ninth Circuit case law (see Kitchen, 82 F.4th at 739), are clear that the RFC is squarely the ALJ's responsibility. See also Ford v. Saul, 950 F.3d 1141, 1149 (9th Cir. 2020) (quotations omitted) (noting ALJs do not need to take opinions "at face value"); Rounds v. Comm'r of Soc. Sec., 807 F.3d 996, 1006 (9th Cir. 2015) (noting ALJs are "responsible for translating and incorporating clinical findings into a succinct RFC"). Indeed, the Ninth Circuit has underscored that ALJs are "capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot

> work." Farlow v. Kijakazi, 53 F.4th 485, 488 (9th Cir. 2022) (emphasis added). That is precisely what the ALJ did here when finding that Plaintiff could perform a range of light work. And since a medical opinion was not required, the ALJ had no duty to develop the record, which undercuts Plaintiff's second argument. See ECF No. 12 at 11-12

Resp. at 8.

Plaintiff's cited authority does establish the importance of obtaining a medical opinion for the ALJ to reference when formulating the RFC.  Indeed, one Court stated that it is a "rather extraordinary" case where no medical opinion is rendered, and that Court cites other cases for a similar proposition.  See,  Gregory C. v. Comm'r of Soc. Sec., 2025 WL 3004043, at *2 (N.D. Cal. Oct. 27, 2025) (ALJ's RFC finding not supported by substantial evidence in the "rather extraordinary [case] that there is not a single opinion regarding Plaintiff's physical functions by any medical professional in the record") (collecting cases).  However, this authority stops short of stating that an opinion is required in every case.  On the other hand, Defendant's authority establishes that the RFC is reserved to the ALJ, not a doctor, and that an ALJ need not defer to any medical opinion when formulating the RFC.  However, Defendant's authority likewise stops short of establishing that a medical opinion is never required.

These opposing arguments aside, the issue here is simply:  did the ALJ commit error by not obtaining a consultive examiner's opinion regarding the functional impact of Plaintiff's knee condition, and ultimately if it was error, was it harmful error.

Defendant acknowledges that "Plaintiff had severe impairments and that imaging showed severe degenerative changes in Plaintiff's knees."  ECF No. 14, p 6.  Evidence contained in the record demonstrates this: **1**- marked/severe degenerative changes of the left knee, also described as "end stage osteoarthritis" (AR 471, emphasis added); **2**- moderately advanced osteoarthritis in the right knee (AR 471);  **3**- 3-/5 strength in knee extension (AR 524);[3] **4**-

---

[3] Which is somewhere between full strength and paralysis. See https://www.merckmanuals.com/professional/neurologic-disorders/neurologic-examination/how-to-assess-muscle-strength (0: No visible muscle contraction; 1: Visible muscle contraction with no or trace movement; 2: Limb movement, but not against gravity; 3: Movement against gravity but not resistance; 4: Movement against at least some resistance supplied by the examiner; 5: Full strength.

prescription for a walker (AR 453); and, **5**- a body mass index which puts her in the category of obesity (See, e.g. AR 600).

The ALJ determined that Plaintiff was capable of an exertional level of <u>light work</u>. However, the VE testified that reducing the standing and walking capacity from a light exertional level (6 of 8 work hours) would have the effect of reducing the exertional category to sedentary which would preclude Plaintiff from performing her past work.  AR 30.

From Plaintiff motion for summary judgment is the following concerning Plaintiff's condition:

> In July 2022, Plaintiff's clinician recorded bilateral knee pain as well as arthralgias and myalgias, and prescribed bilateral knee braces [AR 451].
> In October 2022, Plaintiff had an x-ray of her left knees which documented abnormal findings including "significant joint space narrowing, subchondral sclerosis, and periarticular osteophytes [that were] Kellgren-Lawrence grade 4" [AR 475].1
> The same month, Plaintiff's physician documented that her "knee pain started back in 2007 slowly worsening. It is now severe, limits her to ambulating just around the house. The pain occurs at the front and inner aspect of the knee. She is unable to squat or kneel due to the pain. Finds great difficulty with going up and down stairs, completing community errands, cooking, putting on shoes and socks, standing from a seated position, walking community distance. The pain does wake her up at night. Has instability and weakness on the knee, uses a hinged knee brace which helps. Ambulates with a cane," and that she "had previous cortisone injections approximately six months ago which gave her little to no relief [and] has been taking narcotic pain medication" [AR 475].
>
> Plaintiff Continues:
>
> Her physician further noted that "her symptoms are quite severe. She has standing and walking intolerance, start-up pain, stiffness, grinding, crepitus, buckling and limp. She has even fallen. On a visual analog scale on a daily basis her pain is between a 9 and a 10" [AR 469]. Her physician also stated that "standing x-rays of the left knee on 10/18/2022 showed bone-on-bone wear in the medial compartment, osteophyte formation, flattening of the femoral condyle and subchondral sclerosis. She has marked patellofemoral osteophyte formation as well as joint space narrowing. Two-view x-rays of the right knee shows marked patellofemoral arthritis as well as moderate narrowing in both the medial and lateral compartments" [AR 469]. Plaintiff's clinician noted that she has "standing and walking intolerance" [AR 469].
>
> See, ECF No. 12, pgs. 2 & 3

Because some portions of the above involve technical medical terminology, it is important to note that ALJ's are not to interpret "raw medical data" that is beyond a layperson's

understanding. See, e.g. Shipp v. Colvin, 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26, 2014) ("Since ... the record contains no [functional opinion] . . . it appears that the ALJ's physical [RFC] . . . assessment was erroneously based solely on the ALJ's own, lay interpretation of plaintiff's testimony and other raw medical evidence in the record.").

Plaintiff's radiology reports reference: 1-subchondral sclerosis, 2- periarticular osteophytes [that were] Kellgren-Lawrence grade four, 3- bone-on-bone wear in the medial compartment, 4- flattening of the femoral condyle and subchondral sclerosis, 5- marked patellofemoral osteophyte formation, and 6- moderate narrowing in both the medial and lateral compartments. It is unquestionable that findings such as these involve "raw medical data" which lie beyond lay interpretation.

Of note, there are findings in the record that lie within lay understanding, for instance: 1- strength of 3-/5 of the left lower extremity, 2-prescription for a walker, 3- 60 years of age, and 4- a BMI in the category of obesity.

In the end however, given the above discussion, it is fairly safe to conclude that the ALJ did in fact err when failing to obtain a consultive medical opinion. The remaining question is thus, was the error harmful? To answer that question the Court turns to the following taken from the Tommasetti case, e.g., a Court "will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)) (emphasis added). Before deciding whether the error here was inconsequential, the Court will address Plaintiff's 3rd claim of error.

### B.    Subjective Symptoms (3d Claim of Error)

#### 1.    Applicable Law

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which comprises the most that a claimant is still capable of doing despite the claimant's particular limitations. This RFC represents an assessment "based on all the relevant evidence" contained within the Certified Administrative Record. 20 C.F.R. § 416.945(a)(1). The

residual functional capacity must consider all of the claimant's impairments, whether those impairments are severe or non-severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ performs a two-step analysis to determine whether a Plaintiff's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and the ALJ finds that there is no evidence of malingering in the record, the ALJ must then evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit the individual's ability to perform work-related activities. S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record. Nevertheless, the medical evidence is still a relevant factor in determining the severity of Claimant's pain and its disabling effects. See, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition, other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- any applicable precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any prescribed medication; 5- treatment other than medications that the claimant receives; 6- any other measures the claimant uses to relieve pain or other symptom;  and 7- other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

**2.    Analysis**

11

The ALJ's RFC analysis, including objective and subjective evidence, is as follows:

> The claimant complains of bilateral knee pain. She allegedly has difficulty lifting, carrying, standing, walking, sitting, and performing postural activities. She allegedly needs to lie down, elevate her legs, change positions, and take breaks or naps often throughout the day. She allegedly has 2 bad days a week (Exhibits B2E, B7E, B9E, B14E, and hearing testimony).

> . . .

> X-rays of the claimant's knees taken in October 2022 and June 2023 showed marked/severe degenerative changes (Exhibits B2F/3, B4F, and B11F/23). However, she has not undergone knee surgery, did not find physical therapy to be helpful, is using only lidocaine patches for pain, and does not take any pain medication (hearing testimony); there is little evidence that she has had difficulty obtaining treatment as necessary. She has not alleged any significant side effects from lidocaine patches. She testified that she got an orthopedic injection for her knee about a year ago but her pain worsened, and now she is pending with a pain specialist (hearing testimony). The treatment notes reflect that she sometimes had tenderness, crepitus, and diminished ranges of motion in the knees (Exhibits B2F, B7F, B9F, and B11F), but she usually retained most of their ranges of motion, exhibited good patellar tracking bilaterally, displayed no knee laxity bilaterally, and demonstrated normal strength in the right lower extremity and at least 3-/5 strength in the left lower extremity (Exhibits B6F and B9F). She was often noted to have normal ranges of motion throughout the musculoskeletal system (Exhibits B6F/5, B8F/7, B8F/12, and B8F/17). She was able to sit comfortably without difficulty on August 22, 2024 (Exhibit B6F/5). She allegedly uses a cane and a walker, but there is little objective evidence that a medical source prescribed long-term use of any assistive device (Exhibits B1F-B11F). Although a medical source ordered a walker in March 2022 and physical therapy records from 2024 mentioned walker use (Exhibits B1F/10 and B7F), the claimant admittedly started using a walker only 4 months ago and it is admittedly not prescribed (hearing testimony). The treatment notes also reflect that the claimant usually had a normal gait and ambulated without any assistive device (Exhibits B6F and B9F). Moreover, as discussed earlier, the record reflects substantial gainful activity in 2023 and 2024, which shows that she has the capacity to perform some work (Exhibits B14D and hearing testimony). Although she has described daily activities that are highly limited (e.g., Exhibit B14E), it is difficult to attribute that degree of limitation to her medical condition, as opposed to other reasons, in view of the medical evidence and other factors discussed in this decision. Overall, the claimant's allegedly limited daily activities are considered to be outweighed by the factors discussed in this decision.

AR 636.

The ALJ here did acknowledge Plaintiff's marked/severe degenerative changes, but references that Plaintiff had not undergone knee surgery and that she did not find physical therapy to be helpful. The ALJ states that Plaintiff "is using only lidocaine patches for pain, and does not

12

take any pain medication," and that "there is little evidence that she has had difficulty obtaining treatment as necessary."   The ALJ further observed that Plaintiff "got an orthopedic injection for her knee about a year ago but her pain worsened."  AR 636.

However, the records not only show that Plaintiff used lidocaine patches but also show that Plaintiff pursued physical therapy and injections, neither of which was successful.  Further, though Plaintiff may not have been taking pain medication at the time of the administrative hearing, the record does reflect that she was taking narcotic pain medication as of October 25, 2022.  AR 473.

Although a claimant's "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can undermine her allegations about the severity of an impairment, Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989), there is no evidence that Plaintiff was prescribed pain medication and refused to take it

The ALJ also stated that Plaintiff's medical records sometimes noted tenderness, crepitus, and diminished ranges of motion in the knees (Exhibits B2F, B7F, B9F, and B11F), but she "usually retained most of their ranges of motion, exhibited good patellar tracking bilaterally, displayed no knee laxity bilaterally, and demonstrated normal strength in the right lower extremity and at least 3-/5 strength in the left lower extremity (Exhibits B6F and B9F), and that "She was often noted to have normal ranges of motion throughout the musculoskeletal system (Exhibits B6F/5, B8F/7, B8F/12, and B8F/17)."   AR 636. The ALJ cites 4 exhibits demonstrating abnormalities and 4 exhibits describing normal findings.

Among the ALJ's list of normal findings is that Plaintiff had "at least 3-/5 strength in the left lower extremity."   But this finding is not especially supportive of the RFC's light exertional level as that level requires the ability to stand/walk 6 of 8 working hours.

The ALJ also references Plaintiff's use of a walker, which was prescribed in March 2022, and 2024 physical therapy records mention walker use.

The ALJ further noted that Plaintiff was able to sit comfortably without difficulty on August 22, 2024 (Exhibit B6F/5).  However, sitting is not the chief impediment to light exertional work, as again, light exertional work requires standing/walking 6 of 8 working hours.  Thus, only if Plaintiff's RFC was limited to sedentary work would this observation have meaningful relevance.

13

Finally, the ALJ notes that "the record reflects substantial gainful activity in 2023 and 2024, arguing that this demonstrates that Plaintiff has the capacity to perform some work (Exhibits B14D and hearing testimony)."

Resp. at 1, ECF No. 14.

Plaintiff responds:

> Plaintiff testified at the hearing that she held yard sales over two summers [AR 17]. However, she provided no testimony as to what she did for them. Indeed, she stated that her daughter helped with the yard sales, and also stated that her daughter was her caretaker and performed all of her household tasks [e.g., AR 18, 25]. The ALJ failed to elicit further testimony from Plaintiff indicating the level of activity required of her by the yard sales. Therefore, there is no evidence that the yard sales required standing or walking in any meaningful sense, and certainly no evidence that they included activities that were inconsistent with Plaintiff's symptom testimony. This statement by the ALJ was not clear and convincing.

MSJ at 12.

Indeed, there is no evidence about what exertional activities Plaintiff performed at these yard sales, particularly given that her daughter assisted her and was described as her primary caretaker.   And, as for the $5,000 in earnings, this fact provides no additional clarity about Plaintiff's exertional level.   What does provide clarity as to her exertional level is found in Plaintiff's motion for summary judgement:

> Beginning in October 2024, Plaintiff attended physical therapy. Upon her initial screening, Plaintiff's therapist noted that she had significant limitation with most activities, and a pain level at 10/10 [AR 520]. Plaintiff's therapist also noted that she "has difficulty walking and playing with grandchildren," and has "occasional numbness and tingling in the feet and cramps that spread throughout legs," as well as "falling three times in the past six months" [AR 535]. Her therapist noted that she was a "fall risk," and upon examination had reduced hip and knee range of motion, and reduced knee strength [AR 534-35]. Plaintiff was noted to use her upper extremities for transfers, had an antalgic gait with the use of a four-wheel walker [AR 535].
> In November, Plaintiff's therapist noted "continued popping in L>R knee" [AR 523]. Plaintiff's examination documented continued reduced hip and knee range of motion, and reduced knee strength [AR 524].

See, ECF No. 12, pgs. 3 &4.

Plaintiff's subjective statements noting pain 10/10, difficulty walking and playing with

grandchildren, significant limitation with most activities, occasional numbness in her feet, and three falls in the past six months, all support that Plaintiff was most likely not capable of standing/walking 6 of 8 hours in a workday.  To the extent the ALJ determined otherwise was error.

### C.    The ALJ's Errors Were Not Inconsequential

The Court now turns to the ultimate question, were the ALJ's errors as discussed above inconsequential to the ALJ's ultimate nondisability determination.  See, *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

As pointed out above, the VE testified that reducing the standing/walking capacity from the light exertional level (6 of 8 hours) would have the effect of reducing the exertional category to sedentary which in turn would preclude Plaintiff from performing her past work.  AR 30

Equally important, as Plaintiff explains:

At sedentary exertion, Plaintiff would be presumptively disabled by application of the Medical-Vocational Guidelines (the Grids). See 20 C.F.R., pt. 404, subpart P, appendix 2 § 201.06.

Defendant argues:

Moreover, even if Plaintiff were correct, she can point to no harm because there is none. Plaintiff speculates that had the ALJ gotten another opinion, that opinion might have said Plaintiff was limited to sedentary work, and Plaintiff would have thereby been found disabled. ECF No. 12 at 11. This is purely speculative, and Plaintiff's phantom opinion is not consequential to the ultimate finding of nondisability. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

Resp. at 8.

However, it is important recall that: 1- the agency's reviewing physicians at the initial and reconsideration levels concluded there was "I.E." (insufficient evidence) and 2-Plaintiff was undeniably significantly impaired as to standing/walking.

In sum, given that the ALJ did commit error as described above, it is not "clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasett, supra*.

## VI.   <u>Conclusion</u>

Based on the above, the Court finds that substantial evidence and applicable law do not support the ALJ's conclusion denying Plaintiff's disability claim.   Specifically, the Court finds that it was harmful error for the ALJ's not to obtain a consultative medical opinion.

Plaintiff was a 60-year-old woman with a BMI in the obese range, who had marked/severe (aka "end stage") degeneration of her left knee, had moderate degeneration in her right knee, 3-/5 strength in her left lower extremity, and at some point was prescribed a walker.

Therefore, Remand is appropriate.   The ALJ is directed to obtain a consultative medical examination to evaluate the evidence in this case and reach a reasoned conclusion.   See <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (noting that, generally when a court of appeals reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.).

## VII.   <u>Order</u>

Substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.

Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 12) is **GRANTED**.

2. Defendant's cross motion (Doc. 14) is **DENIED.**

3. This matter is **REMANDED** to the Commissioner of Social Security Pursuant to Sentence Four of 42 U.S.C. § 405(g).

4. The Clerk of Court is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **June 17, 2026**           **/s/ Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE

16